UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>                      Plaintiff,<br><br>          v.<br><br>674,739.480211 USDT of Tether cryptocurrency, with an approximate value of $674,469.58.<br><br>                      Defendant. | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** <br><br>Civil Action No.: 5:25-cv-1040 (BKS/TWD) |

The United States of America (the "Plaintiff") brings this verified complaint for forfeiture *in rem* against the above-captioned property and alleges as follows:

## NATURE OF THE ACTION

1. This action *in rem* is brought against the above-captioned property pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and (C) as the proceeds of, and property involved in, violations of Title 18, United States Code, Sections 1343 (wire fraud) and 1956 (money laundering) and 1957 (engaging in monetary transactions in property derived from specified unlawful activity). The matter is also brought pursuant to Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rule G").

## FORFEITURE AUTHORITY

2. Title 18, United States Code, Section 981(a)(1)(A) provides for the forfeiture of: "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of [Title 18], or any property traceable to such property." 18 U.S.C. § 981(a)(1)(A).

3. Title 18, United States Code, Section 981(a)(1)(C) provides for the forfeiture of: "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of … any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." 18 U.S.C. § 981(a)(1)(C).

## THE PARTIES

4. The Plaintiff is the United States of America.

5. The defendant, (referred to hereinafter as the "Defendant Cryptocurrency"), is more particularly described as 674,739.480211 USDT of Tether cryptocurrency, with an approximate value of $674,469.58.

6. The Defendant Cryptocurrency is presently in the custody of the United States of America.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to Title 28, United States Code, Section 1345 and 1355. Section 1345 provides district courts with "original jurisdiction of all civil actions, suits or proceedings commenced by the United States." 28 U.S.C. § 1345. Section 1355(a) provides district courts with "original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress." 28 U.S.C. § 1355(a).

8. This Court has *in rem* jurisdiction over the Defendant Cryptocurrency and venue is properly situated in this district pursuant to Title 28, United States Code, Section 1355(b)(1)(A), which provides that a forfeiture action or proceeding "may be brought in…the district court for

the district in which any of the acts or omissions giving rise to the forfeiture occurred." 28 U.S.C. § 1355(b)(1)(A).

9. Venue is also properly situated in this district pursuant to Title 28, United States Code, Section 1395(b), which provides that "[a] civil proceeding for forfeiture of property may be prosecuted in any district where such property is found." 28 U.S.C. § 1395(b).

## FACTS

10. In May 2024, the Victim, a resident of Onondaga County New York, received an unsolicited invitation on WhatsApp for a "Temporary WhatsApp Experience Group" to make money by trading Bitcoin. The Victim joined the group and received instructions and 'mentoring' on how to proceed.

11. The Victim was instructed to use the Subjects' trading platform (https://www.aonecoin.top) that had the appearance of a legitimate website. Several other purported users of that platform messaged that they were reaping huge profits.

12. After engaging in some activity on that platform, the Victim received an invitation to join a "Permanent Telegram Group," which he did. At first the Victim appeared to make profits and was allowed to make a very small withdrawal of funds from his account. The Victim's assigned group mentor, "Mr. Chris Henry," encouraged the Victim to invest larger and larger sums of money.

13. When the Victim attempted to withdraw some of his funds, he was told that he needed to reach a certain investment goal before the rules permitted any withdrawals. The Victim made over a dozen deposits into the trading platform and repeatedly tried to withdraw from his "account" but was given various excuses and reasons why the rules did not permit any withdrawals,

or was told he must pay additional fees to their associated platform, www.viawinner.com, in order to withdraw his own money. In total the Victim made 4.136202 BTC in deposits.

14. The Subjects instructed the Victim to use online cryptocurrency trading websites located at www.fcgroup.vip, www.viawinner.com, and www.aonecoin.top. On screen, the fraudulent investment platforms appeared to be legitimate cryptocurrency exchanges where the victims could log in, trade, and see their investments grow. However, as soon as victims sent their cryptocurrency through the platforms, the funds then made their way through a complex laundering scheme.

15. Between May 2024 and July 2024, the Victim was convinced to transfer custody of his cryptocurrency to the Subjects under the guise of customer deposits to these fake cryptocurrency exchanges. The Victim later discovered he was unable to withdraw funds he deposited to his accounts, and in some instances, he was extorted for more cryptocurrency when attempting to withdraw. The Victim realized that he was defrauded in late July 2024. This scheme is known as pig butchering.

16. The Victim lost approximately 4.13 BTC to the scheme described herein between May 2024 and July 2024. The Victim provided his initial transactions from Coinbase, a known cryptocurrency exchange, and each of the initial cryptocurrency investments were made in BTC on the Bitcoin blockchain. Through blockchain analysis, the victim's funds were traced to numerous other wallets.

17. From July 23, 2024, through July 30, 2024, the Victim sent 4.136202 BTC in six transactions from his Coinbase account to wallet 36p7UnQC42Qau4g42y33m4satxFMKbsAck. 3.58664 BTC was traced to wallet 3HzHQK9YNUskTpHGRpuTtYu4TzSUD14gRL ("Wallet 3HzHQK9Y"). Wallet 3HzHQK9Y then sent 2.74 BTC in seven transactions to Thorchain to

exchange to Tether ("USDT"). As indicted above, cryptocurrency can be converted into different types of coins to enable trading on different platforms. In this instance, the traced funds were converted from Bitcoin into Tether.

18. Additional tracing identified seven transactions totaling 286542.299 USDT to wallet 0xFf4bBDc981EbE275630704E680C2086498576909 ("Wallet 0xFf4bBD"). Wallet 0xFf4bBD then exchanged the Tether onto the Tron blockchain (simply a different network, but it retains the same value per USDT token) on December 15, 2024, for 118743.317351 USDT TRON, and on December 17, 2024, for 167225.897073 USDT TRON to wallet TDoj7UUpKZieJFK5CHfZcuDpJkWw55Dg3J ("Wallet TDoj7UUp").

19. Wallet TDoj7UUp made two transfers to the Target Wallet TNj4y6nnTX on December 15, 2024 of 194479.719531 USDT TRON and December 17, 2024, of 249473.322623 USDT TRON. A total of 443,953 USDT TRON was traced from the Victim's accounts to the Target Wallet.

20. The tracing of the stolen funds found that many transfers that took place between the initial theft of the Victim's funds were broken down into many smaller transactions and deposits, consolidated into larger 'group' wallets, nested into a wallet within another wallet, or split apart into several smaller transactions along the way, all of which demonstrate the efforts taken to obfuscate the true origin of funds.

21. As noted above, the funds at the time of seizure in the Target Wallet had been transferred between many other wallets prior to their deposit into the Target Wallet. By tracing the Target Wallet backwards in time to see where money came from, the Target Wallet received funds from two (2) wallets; those wallets received funds from five (5) wallets; those wallets received funds from twenty-four (24) wallets; those wallets received funds from sixty-eight (68)

wallets. This activity is consistent with money laundering and is commonly observed in pig butchering schemes.

## CONCLUSION

22. The facts set forth above support a reasonable belief that the government will be able to meet its burden of proof at trial.

WHEREFORE, pursuant to Supplemental Rule G, the Plaintiff, the United States of America, respectfully requests that the Court:

(1) Issue a Warrant of Arrest *in Rem*, in the form submitted with this Complaint;

(2) Direct any person having any claim to the Defendant Cryptocurrency to file and serve their Verified Claims and Answers as required by 18 U.S.C. § 983(a)(4) and Supplemental Rule G;

(3) Enter judgment declaring the Defendant Cryptocurrency to be forfeited and condemned to the use and benefit of the United States; and

(4) Award such other and further relief to the United States as it deems proper and just.

Dated: July 28, 2025

JOHN A. SARCONE III
Acting United States Attorney

By:   */s/ Adrian LaRochelle*
Adrian LaRochelle
Assistant United States Attorney
Bar Roll No. 701266

VERIFICATION

STATE OF NEW YORK        )
                         ) ss:
COUNTY OF ONONDAGA       )

Daniel Capone III, being duly sworn, deposes and states:

I am a Special Agent with the Federal Bureau of Investigation (FBI). I have read the foregoing Complaint for Forfeiture *in Rem* and assert that the facts contained therein are true to the best of my knowledge and belief, based upon knowledge possessed by me and/or on information received from other law enforcement officers, analysts, and technical professionals.

Dated this 1st day of August, 2025.

Daniel Capone III, Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this 1st day of August, 2025.

Notary Public

MARIANNE A. MEIGS
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01ME5030983
Qualified in Onondaga County
Commission Expires October 24, 2026